IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOSEPH CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:14-CV-22 |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Joseph Campbell ("Campbell") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Campbell alleges that the ALJ erred by finding that his anxiety, depression and cognitive deficits were not severe impairments, by improperly rejecting the opinion of his treating counselor, by failing to consider all of his impairments in combination, and by improperly discounting his credibility. I find that substantial evidence supports the ALJ's decision in all respects. As such, I **RECOMMEND DENYING** Campbell's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Campbell failed to demonstrate that he was disabled under

1

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Campbell filed for SSI and DIB on March 14, 2011, claiming that his disability began on February 4, 2011.[2] Administrative Record, hereinafter "R." 221, 244. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 112–13, 140–41. On September 14, 2012, ALJ Mark O'Hara held a hearing to consider Campbell's disability claim. R. 38–87. Campbell was represented by an attorney at the hearing, which included testimony from vocational expert Andrew Beale. Id.

On February 20, 2013, the ALJ entered his decision analyzing Campbell's claim under the familiar five-step process,[3] and denying Campbell's claim for benefits. R. 15–32. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Campbell's date last insured was December 31, 2015. R. 20. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner

2

found that Campbell suffered from the severe impairments of cardiac disease, obesity and asthma. R. 20. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 22–23. The ALJ further found that Campbell had the residual functional capacity ("RFC") to perform light work, except that he is limited to occasional crawling and climbing ladders, ropes and scaffolds and needs to avoid concentrated exposure to workplace hazards, respiratory irritants, extreme heat and humidity. R. 23–24. The ALJ determined that Campbell could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as packer, small parts assembler and laundry separator. R. 31. Thus, the ALJ concluded that he was not disabled.

Campbell requested that the Appeals Council review the ALJ's decision, and on May 22, 2014, the Appeals Council denied Campbell's request for review (R. 1–4). This appeal followed.

## ANALYSIS

Campbell's arguments focus on the ALJ's consideration of his mental impairments, and the ALJ's conclusion that they cause no more than minimal limitations on Campbell's functioning. Specifically, Campbell alleges that the ALJ erred by: 1) failing to properly evaluate the opinion of his treating mental health provider, Licensed Professional Counselor Mary Rice; 2) finding that his anxiety, depression and cognitive deficits were not severe impairments; 3) failing to properly consider all of his impairments in combination; and 4) improperly discounting his credibility. Having reviewed the record, I find that substantial evidence supports the ALJ's conclusion that Campbell is not disabled, and Campbell's assertions of error essentially ask the court to re-weigh the evidence, which this court cannot do.

---

at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

**Severe Impairments**

Campbell argues that the ALJ failed to properly evaluate the opinion of his counselor Mary Rice, and erroneously concluded that his anxiety, depression and cognitive deficits are non-severe impairments. An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Campbell bears the burden of proving that his depression, anxiety and cognitive deficits are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

The ALJ considered whether Campbell's anxiety, depression or cognitive deficits constitute "severe" impairments in step two of his analysis. The ALJ acknowledged that Campbell had been diagnosed with anxiety and depression by his primary care physician, David Wodicka, M.D. R. 21. However, the ALJ determined that Campbell's anxiety and depression were not "severe" impairments because they did not require significant medical treatment and did not result in any continuous exertional or non-exertional functional limitations. The ALJ determined that Dr. Wodicka's treatment notes reveal that Campbell's anxiety and depression are situational in nature; he was treated conservatively for those impairments; he was prescribed medication; and he started mental health counseling a year after his onset date. R. 21. The ALJ noted that Campbell has never been hospitalized for mental health reasons, he had fairly normal

4

mental status examinations, and he was seen by a psychologist only at the request of his attorney. R. 21.

The ALJ also considered Campbell's cognitive deficits and found that they were non-severe because they have not required significant medical treatment and have not resulted in any continuous exertional or non-exertional functional limitations. R. 21. The ALJ considered the finding of consultative examiner J.C. Conley, Ph.D., that Campbell suffered from marked cognitive deficits. R. 705–11. The ALJ determined that Dr. Conley's conclusions were contradicted by Campbell's treatment records showing no significant ongoing memory, attention or cognitive deficits on examination. The ALJ also found no evidence that Campbell complained to his physicians about debilitating problems with cognition, memory or attention. R. 21. The ALJ considered the four broad functional areas for evaluating mental disorders, and determined that Campbell had mild limitations with activities of daily living; no limitation with social functioning or concentration, persistence or pace; and no episodes of decompensation. R. 22.

The ALJ's conclusions in step two of his analysis are supported by substantial evidence in the record. Campbell was 51 years old on his alleged disability date. R. 244. He completed the 8th grade, and did not receive a GED. R. 249. Campbell previously worked as a helper in an automobile mechanics shop making over $29,000 a year. Id. In 2010, Campbell underwent cardiac catheterization procedures for coronary artery disease. R. 365–435. Campbell also suffers from diabetes and asthma.[4] Campbell sought regular medical treatment from his primary care physician, Dr. Wodicka, throughout the relevant period for his coronary disease, diabetes and asthma. Dr. Wodicka also diagnosed Campbell with anxiety and depression, and prescribed

---

[4] Campbell's arguments on appeal focus on the ALJ's consideration of his mental impairments; thus, the records involving his physical impairments are not set forth in detail in this opinion.

5

medication to treat those conditions. Although Campbell generally visited Dr. Wodicka for cardiac concerns, this opinion focuses on Dr. Wodicka's treatment notes addressing Campbell's mental health issues.

Dr. Wodicka first referred to Campbell's mental health in his treatment note dated October 14, 2010, noting that Campbell became tearful and anxious during his appointment. R. 505. Dr. Wodicka continued to note Campbell's anxiety and stress during his appointments over the next few months. On February 14, 2011, Dr. Wodicka indicated that Campbell had acute anxiety, and on February 28, 2011, Dr. Wodicka stated that "[o]f course, his anxiety is there." R. 501–02. In March 2011, Dr. Wodicka stated that Campbell's cardiologist thinks his chest pain is secondary to his stress and anxiety with his wife. R. 498. Dr. Wodicka noted "[s]evere situational stress," and observed that Campbell is "anxious, upset, crying, etc." Id.

On April 8, 2011, Dr. Wodicka noted "lots of stress, on and on with his family, etc." R. 497. On April 15, 2011, Dr. Wodicka noted that Campbell was "extremely anxious and upset. It is a bad situation with his wife, etc. He is not working. He sits around crying all the time, etc." R. 496. Dr. Wodicka then concluded, "I think he looks a little better although the anxiety and situational stress and depression is extremely remote." Id.

On May 16, 2011, Dr. Wodicka stated, "Mr. Campbell is still extremely anxious….He is having lots of social problems." R. 613. Dr. Wodicka ascribed Campbell's chest pain to his anxiety. Id. Two days later, Campbell presented to the emergency room with complaints of anxiety and chest pain. R. 573. Campbell reported that he was feeling very stressed and suddenly started having a tensing sensation in his left chest, left arm and left neck. Id. Campbell was diagnosed with chest pain, anxiety and a panic attack, and was discharged with instructions

6

Case 6:14-cv-00022-NKM-RSB   Document 28   Filed 08/10/15   Page 6 of 19   Pageid#: 831

to follow up with his primary care physician. R. 583–85. On May 23, 2011, Dr. Wodicka wrote, "I think all this is just anxiety over his marital strife, etc." R. 612.

On May 25, 2011, state agency psychologist Julie Jennings, Ph.D. reviewed Campbell's records and concluded that his affective disorder and anxiety disorder were non-severe. R. 105. She determined that he had mild restrictions with activities of daily living; mild difficulties maintaining concentration, persistence or pace; no difficulties maintaining social functioning, and no repeated episodes of decompensation. R. 106.

Campbell visited Dr. Wodicka on June 2, 2011, and reported that he was very distraught, his chest and arm hurt all the time, and he was worried that he will die at night. R. 611. Dr. Wodicka stated, "I think our biggest problem is his extreme anxiety over his social situation." Id. Dr. Wodicka recommended that Campbell continue taking his anxiety medications. Id. On June 13, 2011, Dr. Wodicka again noted his belief that Campbell's symptoms were due to anxiety over his severe situational stress with his family. R. 610.

Campbell visited cardiologist Jason M. Hackenbracht, M.D., from May 17, 2011 through October 12, 2011. Campbell occasionally reported emotional distress and anxiety during his appointments. R. 638–52. On July 12, 2011, Dr. Hackenbracht's impressions were stable coronary artery disease, hypertension that is controlled, and syncope which may be related to his significant emotional distress. Id. Campbell reported that he feels down and depressed, and he recently wrecked his car after a dizzy spell. R. 639.

On November 4, 2011, state agency psychologist Louis Perrott, Ph.D., reviewed the records and agreed with Dr. Jennings that Campbell's anxiety and affective disorders were non-severe. R. 121–22.

7

Campbell visited Michael A. Okin, M.D., on January 31, 2012, and presented as anxious, hyperventilating at times, and tearful at times. R. 670. He complained of chest pains and shortness of breath. Dr. Okin diagnosed chest pain, depression and anxiety features and panic disorder. Id.

Campbell was referred to counseling with therapist Mary E. Rice on February 23, 2012, by court order related to a child custody case. R. 686. Ms. Rice's treatment notes are not included in the record. Five months into her treatment of Campbell, Ms. Rice completed a mental impairment questionnaire and medical source statement. R. 691–702. Ms. Rice assessed Campbell with marked restrictions in activities of daily living, difficulties maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. R. 695. She noted that he had three episodes of decompensation within a 12 month period. Ms. Rice determined that Campbell would miss about three days of work per month due to his impairments, and found that his medical and mental needs impact his daily ability to function. R. 696. She further noted, "[t]he client's mental health needs impact or exacerbate his medical problems. The client struggles to manage basic life functions as a result and will be majorly impaired in a work environment." R. 699. Ms. Rice concluded that Campbell's "cognitive limitations would make it difficult to carry out detailed instructions. The mood/anxiety symptoms will also impact his ability to focus and concentrate adequately." R. 700. She noted that Campbell will do better with routine or repetitive functions, and that any new activities would create significant stress and that he would struggle to function. R. 700.

On August 22, 2012, Campbell underwent a neuropsychological evaluation by J.C. Conley, Ph.D. R. 705. Dr. Conley performed mental and cognitive examinations, and reviewed Campbell's school records and Ms. Rice's mental source statement. Notably, Dr. Conley did not

8

review Campbell's medical records. Dr. Conley found that Campbell had cognitive impairment in several domains of cognitive functioning, including attention, memory, reading, expressive speech, two-dimensional construction praxis, and executive functions. Dr. Conley stated that Campbell's cognitive deficits are "pervasive and, in some domains, severe (e.g., reading/spelling and attention), rendering him disabled and incapable of maintaining any type of employment, particularly now that it appears that his medical/health problems prevent him from performing demanding physical labor. His impaired attention, mental inactivity, and rapid cortical fatigue also prevent him from performing even light physical tasks, repetitive or otherwise." R. 709. Dr. Conley diagnosed attention-deficit hyperactivity disorder exacerbated by cognitive disorder, expressive language disorder, reading disorder and depressive disorder. R. 709. Dr. Conley also completed a form stating that he agreed with Ms. Rice's assessment regarding Campbell's mental functioning in her August 13, 2012 report. R. 711. There is no evidence of additional mental health treatment in the record.

Overall, the record supports the ALJ's conclusion at step two that although Campbell suffers from anxiety and depression, they are situational in nature and have been treated conservatively, and thus will not result in continuous extertional or non-exertional limitations for a period of 12 months. Dr. Wodicka repeatedly noted that Campbell's anxiety is situational, remote, and related to stress concerning his family. R. 496–98, 610, 612. Additionally, Dr. Wodicka treated Campbell's anxiety and depression solely with medication. Campbell was not referred to a mental health provider until he was ordered to complete mandatory counseling with Ms. Rice by a court in February 2012. Ms. Rice's treatment notes are not included in the record; thus, there is no evidence of more severe mental health symptoms than those noted by Dr. Wodicka.

9

Substantial evidence also supports the ALJ's conclusion that Campbell's anxiety, depression and cognitive deficits have not resulted in any continuous exertional or non-exertional functional limitations. Although Campbell's treating physicians Dr. Wodicka and Dr. Hackenbracht diagnose anxiety and depression, their treatment notes do not reflect any functional limitations arising from those conditions. Rather, Dr. Wodicka routinely noted that Campbell is alert and oriented to time, place and person. R. 497, 501, 503, 506, 507, 612, 614, 616. With regard to cognitive deficits, Campbell's treatment notes include no mention of trouble with memory, concentration, or cognitive functioning. Campbell's school records reflect that he had poor grades and dropped out in the 8th grade. R. 291–98. However, Campbell testified that he worked as an transmission mechanic for over ten years. R. 47–48.

Campbell argues that the ALJ's analysis is flawed because he rejected the opinion of Ms. Rice that he suffers from multiple marked mental restrictions and limitations. Ms. Rice is a non-medical source under the regulations, and thus, the ALJ may consider her opinion only to the extent that it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *4. The regulations instruct the ALJ to consider the nature and extent of the relationship between the non-acceptable medical source and the claimant, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion. Id. Here, the ALJ properly applied these factors and provided reasons based in the record for why he rejected Ms. Rice's opinion regarding Campbell's mental limitations. R. 29–30.

10

Specifically, the ALJ considered Ms. Rice's opinion, and rejected it as conclusory and unsupported by the longitudinal record and limited findings on mental status examinations. R. 29. The ALJ noted that Campbell began treating with Ms. Rice in February 2012, only six months before her opinion was rendered. Additionally, none of Ms. Rice's treatment notes were provided to substantiate her opinion. R. 29. The ALJ also appropriately considered the discrepancy between Ms. Rice's severe findings and Campbell's fairly benign treatment notes. See Forsyth v. Astrue, No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with other physicians' and his own treatment records). The ALJ noted that Campbell's records did not reflect a debilitating condition, and that he has not needed psychiatric hospitalization or intensive outpatient treatment. R. 30.

The ALJ also considered Dr. Conley's opinion and found that it was based on his one-time examination of Campbell and Campbell's subjectively reported symptoms and limitations, rather than objective findings. The ALJ must weigh several factors when evaluating a consultative opinion, such as whether relevant medical evidence supports the opinion, how well explained the opinion is, how consistent the opinion is with the record as a whole, and whether the opinion is from a specialist in the relevant field. 20 C.F.R. § 416.927. Ultimately, the ALJ must consider the opinions received in light of the evidence of record and determine whether the record supports the opinions offered. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, the ALJ was tasked with weighing Dr. Conley's opinion against the record as a whole. The ALJ noted that Dr. Conley did not review any of Campbell's medical records; and further, that Dr. Conley's findings were contradicted by Campbell's treatment records showing no significant ongoing memory, attention or cognitive deficits on examination. R. 29. The ALJ also found no

evidence that Campbell complained to his physicians about debilitating problems with cognition, memory or attention. R. 21.

The ALJ instead relied upon the opinions of the state agency doctors that Campbell's mental impairments are non-severe. R. 30. Indeed, Drs. Jennings and Perrott reviewed the treatment notes and found only mild restriction in activities of daily living, no restriction in social functioning, mild restriction in concentration, persistence, or pace, and no episodes of decompensation. R. 105–06, 121–22. Accordingly, substantial evidence supports the ALJ's decision not to adopt the opinions of Ms. Rice and Dr. Conley.

Campbell also asserts that the ALJ's step two analysis is flawed because he did not follow the guidelines set forth in 20 C.F.R. § 404.1520a for the evaluation of mental impairments. Section 404.1520a requires that the ALJ first evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether he has a medically determinable mental impairment. If the ALJ determines that a medically determinable mental impairment exists, the ALJ must then rate the degree of functional limitation resulting from the impairment. Id. Campbell argues that the ALJ did not evaluate his pertinent symptoms, signs and laboratory findings to determine whether a medically determinable mental impairment exists, but rather, skipped directly to an analysis of the severity of his mental impairments.

I find that the ALJ's opinion followed the guidelines of the regulations. Specifically, as set forth in detail above, the ALJ considered Campbell's allegations of severe mental health symptoms, his medical records, and the opinions of the reviewing, consulting and examining physicians. The ALJ determined that Campbell suffered from the impairments of anxiety, depression and cognitive deficits. R. 21. In his analysis of the severity of those impairments, the ALJ properly considered the four functional areas of activities of daily living, social functioning,

concentration, persistence or pace, and episodes of decompensation. See 20 C.F.R. § 404.1520a. He found mild limitations with activities of daily living, no limitation in his social functioning or concentration, persistence or pace, and no episodes of decompensation. R. 22. These findings are supported by the decisions of the state agency psychologists, as well as by other evidence in the record. Specifically, Campbell testified that he had no problem with personal care; he was able to cook; he could do laundry and clean; and he could drive a car. R. 79, 258–61. With regard to social functioning, Campbell testified that he went out daily, attended church, shopped, took his kids to school, and got along with family, friends and neighbors. R. 22, 78–79, 259–62. Campbell testified that he could handle his own finances and follow spoken instructions, and he passed the written part of his driver's test. R. 259–60.[5]

I remain mindful of the substantial evidence standard in my review. Under this standard, the issue is not whether the ALJ could have found Campbell's mental impairments severe, or could have given more weight to the opinions of Ms. Rice and Dr. Conley. Rather, the issue is whether substantial evidence—more than a scintilla—in the record supports the ALJ's conclusion. Here, the ALJ's step 2 analysis is supported by substantial evidence and should not be disturbed.

---

[5] To the extent that Campbell argues that the ALJ should have conducted a "function-by-function" analysis for his mental impairments, the Fourth Circuit recently grappled with function-by-function analyses in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). The Mascio Court declined accepting a per se rule requiring remand where the ALJ does not perform an explicit function-by-function analysis, but the court did find that "[r]emand may be appropriate... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). In Mascio, the court remanded the claim because the ALJ did not address whether the claimant could perform certain functions throughout the full workday or address conflicting evidence in the record which prevented meaningful review. Id. "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14-CV-76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015). Here, the ALJ's decision contains sufficient information to allow meaningful review.
.

13

Further, even if I find that the ALJ erred in his evaluation of Campbell's impairments at step two, such error would be harmless. "When an ALJ erroneously finds an impairment to be non-severe at step two, there is no prejudice to the claimant if the ALJ sufficiently considers the effect of that impairment at subsequent steps." Hammond v. Astrue, Civ. Action No. TMD 11-2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases); see also 20 C.F.R. § 404.1523; Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Gaskins v. Comm'r, Case No. WDQ-13-1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014). Here, Campbell made the threshold showing that other disorders constituted severe impairments and the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Campbell's ability to work. R. 28–30. The ALJ considered whether Campbell's anxiety, depression and cognitive deficits resulted in any additional limitations at step 4 of the analysis. Thus, any error in the ALJ's analysis at step two is harmless.

### Combination of Impairments

Campbell also contends that the ALJ failed to consider the combination of his medical and mental impairments in determining his RFC. The regulations and Fourth Circuit cases make clear that where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id.

14

(citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)). "The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue 'throughout the disability process.'" Mazyck v. Astrue, 2012 WL 315648, at *2 (D.S.C. Feb. 1, 2012) (citing 20 C.F.R. § 404.1523). However, "an ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Campbell asserts that considering his cardiac symptoms, asthma and obesity, "it is more appropriate that if the claimant possesses a residual capacity to perform and maintain substantial gainful activity it would be sedentary." Pl. Br. Summ. J. 12. Campbell relies upon his medical records reflecting complaints of chest and left arm pain at rest or with exertion, bouts of syncope, and his cardiac disease. Campbell states, "it is reasonable to conclude" that his ability to carry and ambulate would be eroded by his asthma and obesity. Pl. Br. Summ. J. 11. Campbell's argument essentially asks the court to re-analyze the facts and re-weigh the evidence in the record; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. Here, the ALJ relied upon the opinions of the state agency doctors for his conclusion that Campbell could perform a range of light work. R. 30. Notably, the record contains no opinions of medical doctors finding that Campbell is more physically limited.

Further, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Campbell's alleged physical and mental impairments when developing an RFC and finding Campbell not disabled. R. 24–30. The ALJ specifically noted that he had considered the impact of Campbell's obesity in combination with his co-existing impairments. R. 24. The ALJ's review of the medical evidence was not fragmented, as denounced by Walker v. Bowen, but a

15

Case 6:14-cv-00022-NKM-RSB   Document 28   Filed 08/10/15   Page 15 of 19   Pageid#: 840

balanced approach that addressed the symptoms of Campbell's cardiac disease, obesity, diabetes, anxiety, depression and cognitive deficits in an integrated manner. For these reasons, I find that the ALJ did not fail to analyze the combined effect of Campbell's medical problems.

**Credibility**

Campbell argues that the ALJ's credibility analysis fails under Mascio v. Colvin, because Campbell's alleged "inconsistencies" are misstatements of the record or are irrelevant to Campbell's credibility as a whole. In Mascio, the court determined that the ALJ did not explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's RFC. [6] 780 F.3d at 640. It was this "lack of explanation," that the court held warranted remand. Id. See also, Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *6 (N.D.W. Va. June 16, 2015). Here, the ALJ provided explanation for his credibility analysis, which is supported by the record.

The ALJ considered Campbell's testimony about his symptoms and medical treatment in detail and found that "the claimant's contentions as they relate to the intensity, persistence and limiting effects of those symptoms are not credible to the [sic] in light of the longitudinal medical record as a whole." R. 25. The ALJ determined that the treatment record does not support Campbell's allegations regarding the severity of his limitations, noting his routine, conservative treatment, that medication is relatively effective in controlling his symptoms and the minimal findings on examination and diagnostic testing. R. 28.

The ALJ also noted that Campbell made inconsistent statements or statements contradicted by other evidence of record, which undermined his credibility. The ALJ found the

---

[6] The ALJ's decision in this case does not contain the boilerplate credibility language that the Mascio court determined "gets things backwards," by implying that the ability to work is determined first and then is used to determine the claimant's credibility. See Mascio, 780 F.3d at 639.

16

following inconsistencies: 1) Campbell's claimed symptoms are not supported by medical evidence; 2) Campbell testified that he cannot read and write, but took a written driver's test by himself, and represented that he completed the disability paperwork himself; and 3) Campbell denied drinking alcohol, but his records show occasional alcohol use. R. 29. An ALJ may properly consider a claimant less credible when his testimony is inconsistent with other evidence. Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006).

Campbell argues that the record does not support the alleged inconsistencies found by the ALJ in this case; specifically, Campbell asserts that the record reflects that he cannot read and write, and that his statements about alcohol use were not inconsistent with evidence in the record. The ALJ recognized that Campbell testified that his niece helped him fill out his disability forms, but the ALJ also properly noted that the disability forms state that Campbell can read, understands English, can write more than his name in English and that he was the one completing the disability paperwork. R. 247. With regard to his alcohol use, Campbell stated at the administrative hearing that he did not drink, but "probably drank a beer a long time ago." R. 66. The ALJ noted that his medical records indicate that Campbell "drinks alcohol on occasion," and that his alcohol use was "rare" or "occasional." R. 29. I agree with Campbell that the inconsistency between those statements is tenuous, but I find that any error by the ALJ in this regard is not a basis for remand. See Tanner v. Comm'r of Soc. Sec., 602 F.Appx. 95, 101 (4th Cir. 2015) (unpublished) (finding an ALJ's error to be harmless where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of nondisability").

It is apparent from his decision that the ALJ reviewed with some detail the medical record regarding Campbell's impairments, and measured his credibility against the objective

17

medical evidence. R. 24–30. Credibility determinations are the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). The ALJ's credibility determination is supported by substantial evidence, as set forth more fully above, and the court will not disturb it. See Johnson, 434 F.3d at 658-59 (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.

Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter: August 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge